IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

*Norfolk Division*

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>JOHN PATRICK GORDON DANE<br><br>Defendant. | Case No. 2:23-cr-104 |

### GOVERNMENT'S POSITION ON SENTENCING

The United States of America now submits its position with respect to the defendant's sentencing factors. In the Presentence Investigation Report (PSR) prepared in this matter, the United States Probation Office determined that the advisory guidelines sentencing range is a term of 57 to 71 months imprisonment for Count One, Smuggling Goods into the United States, in violation of 18 U.S.C. §§ 545 and 2; and Count Three, Felon in Possession of a Firearm, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(8).

The defendant's base offense level is 20 under U.S.S.G. § 2K2.1(a)(4)(B). PSR ¶ 20. He received a four-level enhancement because the offense involved 8 to 24 firearms under U.S.S.G. § 2K2.1(b)(1)(B). PSR ¶ 21. He also received a four-level enhancement because one of the firearms had an altered or obliterated serial number under U.S.S.G. § 2K2.1(b)(4)(B). PSR ¶ 22.

After acceptance of responsibility, the defendant's Total Offense Level is 25. PSR ¶ 30. His Criminal History Category is I. PSR ¶¶ 40 and 41.

Neither party has an objection to the PSR.

For the reasons below, the Court should impose a sentence at the high-end of the guidelines—71 months. This sentence would be sufficient, but not greater than necessary, to accomplish the goals of 18 U.S.C. § 3553(a).

## I. BACKGROUND

On August 9, 2023, a federal Grand Jury for the Eastern District of Virginia, sitting in Norfolk, returned a four-count Indictment against the defendant. Count One charges Smuggling Goods into the United States, in violation of 18 U.S.C. §§ 545 and 2; Count Two charges the Illegal Possession of a Machinegun, in violation of 18 U.S.C. §§ 922(o), 924(a)(2), and 26 U.S.C. § 5854(b); Count Three charges Felon in Possession of a Firearm, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(8); and Count Four charges Transporting Machineguns Without a License, in violation of 18 U.S.C. §§ 922(a)(4), 924(a)(1)(B), and 2, and 26 U.S.C. § 5854(b).

On September 14, 2023, in accordance with the terms of a Plea Agreement, the defendant pleaded guilty to Counts One and Three of the four-count Indictment. At that time, the Court accepted the defendant's plea, found him guilty, and continued sentencing pending the completion of a presentence report.

## II. MOTION FOR AN ADDITIONAL POINT FOR ACCEPTANCE

The United States moves this Court, pursuant to U.S.S.G. §3E1.1(b), to grant a one-level reduction in the defendant's offense level for acceptance of responsibility. The defendant timely notified the United States of his intention to enter a plea of guilty, thereby allowing the United

States to avoid preparing for trial and permitting the United States and the Court to allocate their resources efficiently.

### III. STANDARDS GOVERNING SENTENCING

In *United States v. Booker*, the Supreme Court made clear that sentencing courts should consult [the Sentencing] Guidelines and take them into account when sentencing." 543 U.S. 220, 264 (2005). The Supreme Court provided this direction to promote the sentencing goals of Congress, namely to "provide certainty and fairness in meeting the purposes of sentencing, [while] avoiding unwarranted sentencing disparities." *Booker*, 543 U.S. at 264 (quoting 28 U.S.C. § 991(b)(1)(B)). In *Molina-Martinez v. United States*, the Court emphasized the role the Guidelines play in achieving "[u]niformity and proportionality in sentencing," and noted that "the Guidelines are not only the starting point for most federal sentencing proceedings but also the lodestar." 136 S. Ct. 1338, 1346 (2016).

> The Fourth Circuit has provided the following guidance in the wake of *Booker*:
>
> A district court shall first calculate (after making the appropriate findings of fact) the range prescribed by the guidelines. Then, the court shall consider that range as well as other relevant factors set forth in the guidelines and those factors set forth in [18 U.S.C.] § 3553(a) before imposing the sentence.

*United States v. Hughes*, 401 F.3d 540, 546 (4th Cir. 2005). Thus, sentencing courts must consider the factors outlined in 18 U.S.C. § 3553(a), including the need for the sentence "to reflect the seriousness of the offense, to promote respect for law, and to provide just punishment for the offense; [and] to afford adequate deterrence to criminal conduct." 18 U.S.C. § 3553(a)(2)(A) and (B).

"[I]n imposing a sentence after *Booker*, the district court must engage in a multi-step process. First, the court must correctly determine, after making appropriate findings of fact, the

3

applicable guideline range." *United States v. Moreland*, 437 F.3d 424, 432 (4th Cir. 2006). "Next, the court must 'determine whether a sentence within that range serves the factors set forth in § 3553(a) and, if not, select a sentence [within statutory limits] that does serve those factors.'" *Id.* (quoting *United States v. Green*, 436 F.3d 449, 455 (4th Cir. 2006)). In making this determination,

> a sentencing court must consider "the nature and circumstances of the offense and the history and characteristics of the defendant" and the need "to reflect the seriousness of the offense," provide "just punishment," "afford adequate deterrence," "protect the public," and "avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct."

*United States v. Hampton*, 441 F.3d 284, 287 (4th Cir. 2006) (quoting 18 U.S.C. § 3553(a)).

### IV. ARGUMENT

#### A. Nature and Circumstances of the Offense

In December 2022, law enforcement received information that the defendant was trafficking suppressors, commonly referred to as "silencers," and Glock switches.[1] The defendant was running a firearm distribution business from his residence on Taylor Road in Virginia Beach. PSR ¶ 6. To facilitate his business, he ordered firearm suppressors and Glock switches from China. *Id*. To evade detection by United States Customs and Border Protection (CBP), the labels of packages containing these dangerous devices were improperly marked. *Id*.

CBP intercepted a package entering the country from China and destined for the defendant's residence on Taylor Road. *Id*. The bill of lading falsely identified the contents as an "adapter." *Id*. Upon inspection, they determined the package actually contained suppressors. *Id*.

---

[1] A "Glock Switch" is a device that attaches to a Glock firearm, which converts the semiautomatic Glock firearm into an automatic firearm. A Glock switch qualifies as a "machinegun" under 26 U.S.C. §5845(b) because the device causes the firearm to expel more than one projectile with the single pull of the trigger. Furthermore, a Glock Switch qualifies as both a firearm and a machinegun, even without it being affixed to a Glock firearm.

4

Glock switches and suppressors are largely purchased through black market websites linked to China. It is common for criminals to use these websites to obtain these items which would otherwise be more difficult to purchase within the United States. Additionally, criminals who intend to distribute illegal firearms will often seek items through these websites as they are cheaper than seeking these items within the United States.

On January 10, 2023, the ATF Norfolk Field Office executed a search warrant on the defendant's residence. PSR ¶ 6. Agents located the defendant in a shed in the backyard of the residence. *Id*. Inside the shed, law enforcement recovered 17 firearms and two switches. *Id*. The defendant was also found in possession of a Glock 17. *Id*. The firearm was ready for use – loaded with a high-capacity magazine and a Glock switch attached. *Id*.

After his arrest, the defendant admitted he was trafficking firearms. PSR ¶¶ 6 and 12. He admitted he was buying suppressors and switches online from China. *Id*. Then he would sell the firearms on Facebook Marketplace. *Id*. Further, he admitted that he converted a semiautomatic AR-15 rifle into an automatic machinegun. PSR ¶ 12. Ultimately, the defendant is attributed with possessing 18 firearms, not including the Glock switches.[2] It is confirmed that he trafficked or attempted to traffic at least nine Glock switches. *Id*.

---

[2] Glock switches meet the statutory definition of a firearm in 18 U.S.C. § 921(a)(3); however, according to the United States Sentencing Commission, Glock switches do not meet the guidelines definition of a firearm.



The defendant's conduct is quite serious and represents a significant danger in our society. He intentionally subverted laws and regulations designed to protect our communities and sold dangerous devices that enhance a firearm's firing capacity. The proliferation of conversion kits, including ones like the devices the defendant possessed, has drawn national attention.[4] On April 11, 2022, 40 members of Congress signed a letter to the ATF urging it to take action to stem proliferation of these devices.[5] The combination of a high-capacity magazine with a conversion device can inflict incredible damage and fire hundreds of rounds over a wide area within just seconds.

---

[3] This is a "selfie" image recovered from the defendant's cell phone, which depicts the defendant inside his shed. Many of the firearms depicted in this photograph were recovered during the search warrant.

[4] Erin Wise, *ATF Sees Rise in Quarter-Sized Switch That Turns Handguns into Machine Guns*, WBMA (May 4, 2022) (https://abc3340.com/news/local/atf-sees-rise-in-quarter-sized-switch-that-turns-handguns-into-machine-guns) (last visited February 12, 2024).

[5] Letter from 40 Members of Congress to Marvin Richardson, Acting Direct, ATF (April 11, 2022) (https://carbajal.house.gov/uploadedfiles/2022-04-11_letter_to_atf_on_auto_sears_final_copy.pdf) (last visited February 12, 2024).

### B. History and Characteristics of Defendant

Based on the information contained in the PSR, the defendant's conduct was driven by greed.

The defendant obtained his GED and was consistently employed until his arrest on these charges. PSR ¶¶ 66, 71–77. As he represented, though is parents divorced while he was young, it appears he had a relatively stable childhood. PSR ¶¶ 47-54. He denied any abuse from his family and that an importance was placed on education. *Id*. Surprisingly, despite the defendant's stable upbringing, he decided to smuggle and traffic firearm suppressors and machineguns.

The defendant has a Criminal History Category of I due to his dated criminal history. He has a 2012 felony conviction for possession with intent to distribute marijuana. PSR ¶ 38. While the conviction is dated, he had two subsequent probation violations. *Id*. Other than that felony conviction, his other offenses are minor compared to many defendants that appear in this Court.

### C. Other Factors to be Considered under 18 U.S.C. § 3553(a)

Among the other factors a sentencing court is to consider under Section 3553(a), the United States would highlight the need for the sentence imposed in this case to afford adequate specific deterrence to future criminal conduct, general deterrence for those contemplating similar schemes, and the promotion of respect for the law. The message to the community must be clear: importation and trafficking of illegal Glock switches and suppressors will lead directly to a substantial jail sentence.

The proliferation of firearms and conversion kits that turn semiautomatic firearms into machineguns capable of firing more than a thousand rounds a minute are killing our communities. They are tools which are used far too frequently to further the deadly epidemic of violence in this

area. "An ATF report on guns used in crimes found that the number of machine gun conversion devices seized by law enforcement went up 570% from 2017 to 2021, and officials say preliminary numbers from 2023 show another huge increase."[6]

These devices extraordinarily amplify the threat firearms pose. The ability to fire an entire magazine of ammunition with one pull of the trigger leads to the undisciplined spraying of bullets into the houses, cars, and bodies of uninvolved innocent victims. The results are often devastating, and the defendant here did not just possess a machinegun – he sold them to others for profit.

The defendant knew he could turn a significant profit smuggling firearms into the United States. According to his phone messages and the firearm listings, he was paying between $22 and $38 for each switch he smuggled. PSR ¶ 6. But he was paid $500 for the two switches his co-conspirator sold to undercover agents. *Id*. For this defendant that is a profit of $424, said another way it is a profit of 557%. The proscribed guideline range is wholly appropriate in light of the fact that he trafficked or attempted to traffic at least nine Glock switches.

Specific deterrence is particularly important for a defendant motivated by greed. Despite consistent employment he chose to smuggle and traffic these deadly devices. Those prior convictions and the probation violations were opportunities to correct his path; instead, the defendant significantly escalated his conduct and increased the threat he posed to innocent citizens. Further, a sentence at the high-end of the recommended guidelines will serve to deter future smugglers and traffickers.

The defendant engaged in conduct which is inherently dangerous and detrimental to

---

[6] Ken Dilanian, *A Tiny and Cheap Device Called a 'Glock Switch' Lets Criminals Create Their Own Machine Guns*, NBC News (Dec. 6, 2023), https://www.nbcnews.com/politics/justice-department/tiny-cheap-device-called-glock-switch-lets-criminals-create-machine-gu-rcna127265 (last visited February 12, 2024).

innocent citizens attempting to go about their daily lives, work, raise children, or attend school. And, while there is no evidence he was personally engaged in violent conduct, his actions, and those of other smugglers and traffickers, undeniably contribute to the raging gun violence.[7][8][9]

## V. CONCLUSION

Based on the above facts and the factors set forth in 18 U.S.C. § 3553(a), a sentence of 71 months is sufficient but not greater than necessary.

Respectfully submitted,

Jessica D. Aber
United States Attorney

By:     /s/
Graham M. Stolle
Special Assistant United States Attorney
United States Attorney's Office
World Trade Center, Suite 8000
101 W. Main Street
Norfolk, Virginia 23510
Office Number: (757) 441-6331
Facsimile Number: (757) 441-6689
graham.stolle2@usdoj.gov

---

[7] Jane Alvarez-Wertz, *Norfolk Man Sentenced for Possession of Glock Switches, Handgun*, Wavy.com, (Aug. 26, 2022), https://www.wavy.com/news/local-news/norfolk/norfolk-man-sentenced-for-possession-of-glock-switches-handgun/ (last visited February 12, 2024).

[8] Nathan Crawford, Julius Ayo, *2 Arrested After Police Pursuit in Norfolk Ends in Multi-Vehicle Crash in Portsmouth*, Wavy.com, (Jul. 17, 2021), https://www.wavy.com/news/local-news/portsmouth/police-chase-leads-to-accident-in-portsmouth/?ipid=promo-link-block1 (last visited February 12, 2024).

[9] *Virginia Beach Gang Member Sentenced for Having Gun With 'Machine Gun Conversion' Attachment*, 13News Now, (Aug. 12, 2022) https://www.13newsnow.com/article/news/crime/virginia-beach-gang-member-sentenced-illegal-machine-gun/291-6e078053-c836-48e5-b078-be9c631f495b (last visited February 12, 2024).

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 12th day of February 2024, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send a notification of such filing (NEF) to the following:

>Keith L. Kimball, Esquire
>500 East Main Street
>Suite 500
>Norfolk, Virginia 23502

I further certify that on this 12th day of February 2024, I caused a true and correct copy of the foregoing Position of the United States with Respect to Sentencing Factors to be emailed to the following:

>Latriston L. Cox
>United States Probation Officer
>600 Granby Street
>Suite 200
>Norfolk, Virginia 23510
>(757) 222-7322

>By:     /s/_____
>Graham M. Stolle
>Special Assistant United States Attorney
>United States Attorney's Office
>World Trade Center, Suite 8000
>101 W. Main Street
>Norfolk, Virginia 23510
>Office Number: (757) 441-6331
>Facsimile Number: (757) 441-6689
>graham.stolle2@usdoj.gov